United States District Court
Southern District of Texas

**ENTERED**

July 14, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| TIMOTHY A. AGUILAR, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-25-4990 |
| | § | |
| LIBERTY BANKERS LIFE INSURANCE | § | |
| COMPANY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Timothy A. Aguilar, *pro se*, sued Liberty Bankers Life Insurance Company and John Doe telemarketers for violating the Telephone Consumer Protection Act ("TCPA") and similar Texas laws. (Docket Entry No. 1). Aguilar alleges that Liberty hired insurance agents, including Claudia Tradari Napoletano, to telemarket Liberty's insurance products in violation of the Act. (*Id.* ¶¶ 6–8). Liberty moved to dismiss for lack of standing and for failure to state a claim. (Docket Entry Nos. 8, 9). Based on the pleadings, the motion, the record, and the applicable law, the court grants Liberty Bankers's motion to dismiss for failure to state a claim, without prejudice; (Docket Entry No. 8); the court denies Liberty Bankers's motion to dismiss for lack of jurisdiction; (Docket Entry No. 9); and the court denies Aguilar's motion for leave to file an amended complaint, (Docket Entry No. 27). Aguilar must file a motion for leave to amend consistent with this opinion and Rule 11 by July 31, 2026.

**I.      Background**

Timothy Aguilar has been on the federal Do Not Call Registry since 2012 and on the Texas Do Not Call Registry since August 2023. (Docket Entry No. 1 ¶ 1). Aguilar alleges that he has "received at least one-hundred sixty-three (163) call from a variety of spoofed phone numbers from telemarketers soliciting final expense life insurance products on behalf of Liberty." (*Id.* ¶

27).  Aguilar alleges that Liberty Bankers is responsible for the telemarketing calls because Liberty hired Claudia Tradardi Napoletano and other telemarketers to sell its insurance products.  (*Id.* ¶¶ 8, 35).  To confirm that Liberty Bankers hired Napoletano and other telemarketers, Aguilar purchased the life insurance product they were selling.  (*Id.* ¶ 36).  When Aguilar "received his Liberty Banker's life insurance policy in the mail," he allegedly "confirmed that the final expense telemarketing solicitation calls had been made on behalf of Liberty Bankers."  (*Id.* ¶ 37).  Aguilar alleges that the signature on the Liberty Bankers policy is Napoletano's and that Napoletano spoke with Aguilar in July and August 2025.  (*Id.* ¶ 38).

In August 2025, Aguilar cancelled his insurance policy and "ended any established business relationship created."  (*Id*. ¶¶ 39, 40).  Aguilar also sent a notice of intent requesting that Liberty stop calling his phone number immediately.  He wrote "[a]ny consent given on July 3, 2025 is hereby revoked on July 4th."  (*Id.* ¶ 40).  Liberty Bankers returned the proceeds from Aguilar's life-insurance policy ($90.36) after Aguilar cancelled it.  (Docket Entry No. 1 ¶ 69; Docket Entry No. 1-2 at 17; Docket Entry No. 13 at 40–41).  Aguilar alleges that he did not sign or endorse the check because it has a waiver of rights and claims attached to it.  (*See* Docket Entry No. 1 ¶ 69; Docket Entry No. 1-2 at 17; Docket Entry No. 19 at 21).  Liberty has represented that there is no "expiration date on the check."  (Docket Entry No. 13 at 28).

## II.    The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

2

Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (cleaned up); *Eli Lilly & Co. v. Revive Rx, LLC*, 812 F. Supp. 3d 708, 723 (S.D. Tex. 2025).

## III.    Analysis

Liberty moves to dismiss Aguilar's claims for lack of standing and for failure to state a claim. (Docket Entry Nos. 8, 9). The court reviews Aguilar's motion to dismiss on the merits and the complaint allegations, not for lack of jurisdiction. Liberty's motion to dismiss for lack of standing depends wholly on merits issues of agency liability. *See Al-Ahmed v. Twitter, Inc.*, 648 F. Supp. 3d 1140, 1155 (N.D. Cal. 2023) (rejecting a traceability argument based on a failure to allege or prove vicarious liability because the argument "conflates Article III standing with the merits"). If Liberty is liable under "longstanding" agency theories of actual authority, apparent authority, or ratification, then the alleged misconduct is traceable to Liberty. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 432 (2021). This case does not present a novel theory of vicarious liability that departs substantially from principles "traditionally recognized as providing a basis for lawsuits in American courts." *Id.* at 417; *see* RESTATEMENT (FIRST) OF AGENCY §§ 7, 8, 82 (Am. L. Inst. 1933) (addressing actual authority, apparent authority, and ratification); *see also In re New Era Enters. Inc. Data Incident Litig.*, No. CV H-25-732, 2026 WL 303547, at *2 (S.D. Tex. Feb.

4, 2026) (when courts assess standing, they "assum[e] that on the merits the plaintiffs would be successful in their claims." (quoting *Polelle v. Fla. Sec'y of State*, 131 F.4th 1201, 1211 (11th Cir.), *cert. denied*, 146 S. Ct. 298 (2025))).

Most of the motion to dismiss is about agency, and whether Liberty Bankers is liable for the telemarketers' phone calls. A "seller may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers." *In re Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6584 (2013). But the law does not presume agency. *Suarez v. Jordan*, 35 S.W.3d 268, 272 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Aguilar must allege that Liberty Bankers gave the telemarketers actual authority to place the illegal phone calls, clothed the telemarketers with apparent authority, or ratified their phone calls.

### A.     Actual Authority

"Actual authority denotes that authority which the principal intentionally confers upon the agent, or intentionally allows the agent to believe he has, or by want of ordinary care allows the agent to believe himself to possess." *Suarez*, 35 S.W.3d at 273 (citing *Spring Garden 79U, Inc. v. Stewart Title Co.*, 874 S.W.2d 945, 948 (Tex. App.—Houston [1st Dist.] 1994, no writ)). "For TCPA cases, the relevant inquiry is 'whether the principal controlled—or had the right to control—the "manner and means" of the telemarketing campaign.'" *Gonzalez v. Sav. Bank Mut. Life Ins. Co. of Mass.*, No. EP-24-CV-00289-DB, 2025 WL 1145266, at *4 (W.D. Tex. Apr. 15, 2025) (quoting *Heller v. Marriott Vacations Worldwide Corp.*, EP-22-CV-00398-FM-MAT, 2023 WL 6702696 at *5 (W.D. Tex. Oct. 11, 2023)). The plaintiff must allege "both an agency relationship *and* 'actual authority to place the unlawful calls.'" *Pascal v. Agentra, LLC*, No. 19-CV-02418-DMR, 2019 WL 5212961, at *3 (N.D. Cal. Oct. 16, 2019) (emphasis in original) (quoting *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018)). As to "actual authority to place

4

the unlawful calls," "[a]ctual authority is limited to actions 'specifically mentioned to be done in a written or oral communication' or 'consistent with' a principal's 'general statement of what the agent is supposed to do.'" *Jones*, 887 F.3d at 449 (quoting *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 940 (9th Cir. 2017)).

The complaint includes no factual allegations showing that Liberty Bankers gave Napoletano or others actual authority to telemarket in violation of the TCPA.  (*See* Docket Entry No. 1 ¶¶ 23, 24, 41, 50, 51, 89).  Aguilar makes only conclusory allegations that Napoletano and others are Liberty Bankers's agents and that they could telemarket on Liberty Bankers's behalf. That is insufficient, because the complaint must allege "actual authority to place the unlawful calls." *Pascal*, 2019 WL 5212961, at *3 (quoting *Jones*, 887 F.3d at 449).

In addition, Liberty Bankers proffered its contracts with Napoletano and its telemarketing firms based on these complaint allegations.  This court can consider them under Rule 10(c).  *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).  The Napoletano agreement expressly prohibits the use of an automatic telephone dialing system, pre-recorded messages, or calling numbers on a do-not-call registry as was any conduct that violated state and federal telemarketing laws.  (Docket Entry No. 9 at 22).

Aguilar did not adequately allege that Napoletano and other telemarketers had actual authority to make telephone calls in violation of the federal and Texas TCPA.

### B.    Apparent Authority

"Apparent authority . . . is based on estoppel, arising 'either from a principal knowingly permitting an agent to hold [himself] out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority [he] purports to exercise.'" *Gaines v.*

5

*Kelly*, 235 S.W.3d 179, 182 (Tex. 2007) (quoting *Baptist Mem. Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 948 (Tex. 1998)).  "[T]he principal must either have affirmatively held the agent out as possessing the authority or the principal must have knowingly and voluntarily permitted the agent to act in an unauthorized manner." *Suarez*, 35 S.W.3d at 273.  "[T]he principal's full knowledge of all material facts is essential to establish a claim of apparent authority based on estoppel," and "when making that determination, only the conduct of the principal is relevant." *Gaines*, 235 S.W.3d at 182.  "[T]he standard is that of a reasonably prudent person, using diligence and discretion to ascertain the agent's authority." *Id.* at 182–83. "Thus, to determine an agent's apparent authority [a court must] examine the conduct of the principal and the reasonableness of the third party's assumptions about authority." *Id.* at 183.

Aguilar's apparent-authority theory fails because there is no allegation that Liberty Bankers itself made representations to Aguilar about the telemarketers or their authority to telemarket in violation of the TCPA.  There is no allegation in the complaint that Aguilar spoke with a Liberty Bankers employee.  He alleges only that he spoke with agents or contractors for whose actions he wants to hold Liberty Bankers liable.  Because apparent authority requires reliance on the representations or acts of the principal and Aguilar does not allege reliance on representations made by the principal, Liberty Bankers, his apparent-authority theory fails.

### C.      Ratification

"Ratification is the affirmance by a person of a prior act which when performed did not bind him . . . ." *Disney Enters., Inc. v. Esprit Fin., Inc.*, 981 S.W.2d 25, 31 (Tex. App.—San Antonio 1998, pet. dism'd w.o.j.).  "Ratification, in this context, is not a form of authorization, but a legal concept in agency law describing the relations between parties after affirmance by a person of a transaction done or purported to be done for him." *Id.* (citing RESTATEMENT (SECOND) OF AGENCY § 82 cmt. a, b (Am. L. Inst. 1958)).  Ratification occurs when "the individual for whom

6

an act was done retains the benefits of the transaction after acquiring full knowledge of the transaction." *Id.* (citing *Land Title Co. of Dallas v. F.M. Stigler, Inc.*, 609 S.W.2d 754, 756 (Tex. 1980)).

In TCPA cases, evidence that the plaintiff purchased the defendant's product, that the defendant knew of the unlawful telemarketing scheme, and that the defendant retained the profits from that purchase can be sufficient to establish ratification. *See Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 833 (N.D. Ill. 2016) (denying summary judgment on a ratification theory because there was evidence that "some or all of the calls being made were unlawful under the TCPA and that each of them continued to accept business flowing from the campaign."). Aguilar purchased a Liberty Bankers life insurance policy. (Docket Entry No. 1 ¶¶ 36–37). But Liberty Bankers returned Aguilar's life-insurance payments ($90.36) after Aguilar cancelled the policy. (*See* Docket Entry No. 1 ¶ 69; *see also* Docket Entry No. 13 at 40–41). Liberty Bankers did not ratify the allegedly unlawful TCPA calls because it retained no benefit from them.

Aguilar argues in response that he did not sign or endorse the check because it has a waiver of rights and claims attached to it. (*See* Docket Entry No. 1 ¶ 69; Docket Entry No. 19 at 21). This fact is immaterial. Liberty Bankers has ceded back to Aguilar any and all benefits that it gained from the allegedly unlawful TCPA calls. The settlement language on back of the check is unclear on whether it settles all legal claims—including this TCPA suit—or is limited to debts or liabilities under the life-insurance policy. (*See* Docket Entry No. 1-2 at 17). Even if the settlement language covered this suit, that would not mean Liberty Bankers ratified the allegedly unlawful calls. If Aguilar accepts the check, he settles claims that are not viable, precisely because Liberty Bankers sent the check to him.

Liberty Bankers did not ratify its agents allegedly unlawful telemarketing because it returned the life-insurance proceeds to Aguilar.

7

**IV.    Conclusion**

For these reasons, the court grants Liberty Bankers's motion to dismiss for failure to state a claim.  (Docket Entry No. 8).  The court denies Liberty Bankers's motion to dismiss for lack of jurisdiction.  (Docket Entry No. 9).  The court denies Aguilar's motion for leave to file an amended complaint.  (Docket Entry No. 27).

Aguilar's dismissal is without prejudice.  By July 31, 2026, Aguilar must file a motion for leave to amend, of no more than five pages, explaining how his amended complaint adequately alleges vicarious liability.  His motion for leave to amend should attach his proposed amended complaint.

SIGNED on July 14, 2026, at Houston, Texas.

Lee H. Rosenthal
Senior United States District Judge

8